Once a person within the house opened the door and saw that it was police, it seems like that purpose has already been served. It's obviated. It would be silly to say, We are police at your door when the person has opened the door and seen that there are indeed police at the door. The second purpose of it is to give the person in the house an opportunity to open the door peacefully instead of getting his property damaged when the police open it forcefully. That purpose was already served. He opened the door and he decided to close it rather than say, Would you like to come in? What is left of the purpose of the knock-and-announce rule? Well, there are two answers to that. First, I think the purpose of the knock-and-announce rule is to protect property, protect the police, and protect the privacy interest of the occupants. Second, the privacy, I don't know if you're right about that. I mean, they've got a search warrant here. There's already been a judicial determination that the privacy right is gone. Well, I think if you look at the United States v. Becker, that outlines what the purposes of the knock-and-announce rule are. But the more important thing is that the homeowner is supposed to know who is entering, why the person is entering, and be given a reasonable opportunity to surrender his privacy voluntarily. But when he closes the door, seeing the raid team standing outside, that's a pretty clear indication on the part of whoever is behind the door that they don't want the police to enter. Well, Your Honor, that would be true if the police had knocked on the door and said, police, and then the person opened the door and then closed the door. But that's not what happened here. I had no idea that that was the police out there when they got into, I guess there was a little tug-of-war at the door between the lead officer on the SWAT team and whoever was inside who was trying to close the door while the SWAT officer was trying to force it open. That's absolutely undisputed in the testimony. The testimony was that the police approached the door as stealthily as possible. They were waiting for the teams at the side and the back to get into position. The person inside heard noise. They thought there was the person, the people inside thought a burglar was at the house. They were overheard. And the person went to the door just to see who's there, opens the door, and all of a sudden he sees this mass of police officers. Exactly. And he saw that there were people. But the point is that before he is given a chance to know why they're there, why they have a right to get in and let them come in voluntarily, what happens instead is two things. First. As I understand the facts, and I may be wrong, I may be mixing it up with one of the 30 or so other cases, the policeman started to say, search warrant, and the person in the house cut him off. He said, search, door slams. Well, the testimony was there were two people who testified. One of them said that the person said, police, search warrant, as the officer's going in. That's Sergeant Chapman. Officer Lubdell, who's the one who's actually serving the warrant, is the person at the door, says he opens the door, the person, he's about to say search, the door starts to close. Before he even says warrant, he kicks his way in. Now, the other thing that's happening, I think this is critical. Practical question. Yes. We had a case called U.S.B. Banks where the Supreme Court granted cert. Right. It was decided today, Your Honor. Oh, yeah. Tell us. I'm worried. Can't that affect this case? It. Shower. I'm in the shower, so I'm entitled to more time. Naked, wet, and soapy, I believe. Well, I. You need time to get out of the shower and flush the soap down the toilet. Wasn't that the. I hesitate to be the, provide the oral syllabus for the case, but. Oh, go ahead, Mr. Gannon. All right. I'm signing Detroit Lumber. But what, they did reverse Banks, but I think, in my view, is in fact, Banks is helpful to the appellant's position here, because what the Supreme Court unanimously said was that in each of these cases, there's always individual facts. So it's a, there's not, we're not going to establish a bright line rule. It's just too hard to do that. It's going to be a fact-specific inquiry. They said in this case, look, given the size of the apartment, a very small apartment, 20 seconds, that was enough time to, for the police to conclude that evidence could be destroyed and therefore they could, they could enter. But the point I was trying to make, and I think this is critical to the Court's understanding, is that the plan here, and this is what happened, was the moment the police say search warrant, the police at the back and the side of the house break the windows and throw in these stun grenades. And when the police do that, the entire purpose of the knock-and-announce rule has been eviscerated without any chance whatsoever for the occupants of the house to ever let the police in peacefully. Why wasn't the chance for the occupants of the house to avoid the stun grenades and the highly aggressive tactic, why wasn't the chance when the person opened the door and saw that there were all the police there, and at that point he could have said, okay, and opened the door? Because the moment, because the whole plan was that the police were going to go to the front door. But we don't know if they would have thrown the smoke grenades in at all if he'd opened the door. Well, Your Honor, this is the point, that it was true that because no one, neither the person inside nor the person outside, neither of them really expected to see each other. And in that sense, the plan went awry. But the point... Well, people inside didn't expect to see the police, but the police obviously expected to see people inside the house. But the police hadn't knocked. The person... The door opened before they knocked. The door opens before they knocked. Now, at that point, immediately what happens is there's this confused scene where the police officer is saying, police search. As soon as he says that... Before they said that, the guy slammed the door. Well, it's not really clear from the... Well, they're approaching the door. The door opens. The person inside sees the police. The door is slammed, and then the police open it, while someone simultaneously yells, police search. Well, I think the testimony actually was slightly different from Chapman and Lobdell, where the two people, two officers who testified. But both of them, I think, essentially said, the door is starting to close. It never really closes all the way. And at the same time, the police officer is saying, search warrant. And the problem there is that as soon as he says search warrant, the windows explode. They're using these iron bars to smash the windows. The police officer is at the side and the back of the house. They don't know anything about what's happening except... where these sorts of police tactics should be employed, are you? Absolutely not. Of course there are circumstances. If you thought it was reasonable under these circumstances to employ them, then let's get to the heart of it. Part of the information known to the officers was that there were explosives inside this residence. We are not dealing with just a bunch of false identity people. We're dealing with people who are armed with dangerous weapons. What is wrong with the police taking special precautions as they did in the end? I mean, this is a classic high-risk search warrant, is it not? Your Honor, with all due respect, I don't think that was really what the facts were. The facts were that... I read the affidavit. That's what the affidavit says. That convinced the Clark County district court judge to issue a search warrant. Well, if you read the plan for the warrant, which lists what the police were expecting, they said there were possible explosives precursors. They were binary explosives, which you have to... I'm very familiar with binary component explosives. Right. Prosecutor cases involving them. But the point is... They're very dangerous. They are basically commercial explosives. All you need is a detonator cap, and you've got the equivalent dynamite. But they're not the equivalent of a weapon, because there's a big difference between using... The point is, Your Honor, if the police had seriously thought that there was a tremendous danger of these explosives being detonated, why would they have thrown a hand grenade into the house? Well, they're not hand grenades. But I know they're not hand grenades. But they produce... Well, Your Honor, they're known as stun grenades. You look at the pictures, they cause fires. But they don't detonate binary component explosives. That requires a detonating cap. And that's not what a stun grenade is. I totally agree that that's true. But my point is, though, that if you look at the testimony here, the police did not indicate that they were serving the warrant in this way because of their concern about these explosives. Their testimony... You're asking us to believe that they call out the SWAT team because it was just a training exercise? Is that what you're suggesting? I'm not... I mean, this is a classic case. We want to have people who are trained in high-risk entry. Your Honor, I think if you look at the cases that talk about what edges and circumstances permit a violent entry, this does not come close. And in fact, the police officer's testimony was not that this was an unusual way to serve a search warrant. He said, this is the way we always do it. That's Sergeant Chapman's testimony. Could you clarify something for me? Yes. Is there any dispute that when the person inside opened the door and then afterwards they start to close it, is there any dispute that they saw the police there? There's no dispute that they saw the police. The dispute is, and this is the... But the police know that the person who's inside is starting to close the door, at a minimum, if they haven't slammed it shut, and doesn't want to let them enter. Well... Why isn't that exigent enough? Because, Your Honor, they didn't give the person at the door the chance to understand that the police were there, had a right to be there, and give them a chance to open the door. I don't think it's... Counsel, you know, I have a couple of factual scenarios that are real that I keep thinking of when you talk about this. I know some people that keep rifles by the door. And if they showed hostility to entry, you'd have to wonder whether what they want a moment for is to grab the rifle. Why don't the police have a right to worry about that? Your Honor, of course the police have a right to worry about that. And I'm not suggesting they don't. What I am suggesting is if you look at the cases going all the way back to Miller, when just because somebody tries to close a door, not in response to a knock, but it's a totally ambiguous gesture. When you see a lot of... I have trouble seeing the ambiguity. Well, the reason it's ambiguous is... It means I am not letting you in. No, it doesn't. It may mean that you're startled. Of course, it might be an instinctive reaction that you open a door, you see a lot of people... Or something like that, just to ask for a little more explanation. Your Honor, all they needed to do was to make... And I think this would have obviated the whole problem. One was not to have this plan to break in the doors, the windows at the back and the side. Second, the other thing they needed to do was if they just said, look, we're the police, we have a search warrant, open the door now and let us in.  They didn't do that. I'm going to go down into the elements. The focus is just on the knock and announce part. I have a long driveway, and if the UPS man comes down, I hear his truck on the snow, hear the crunching on the snow, I go to the door, I look out the window, I see it's a UPS truck, not worried about it. If I'm there, I typically open the door and step out onto the deck and close the door behind me before he's even there. Right. Now, suppose he steps up on my deck and he says, company rules, I've got to knock on your door and announce who I am. I say, I already opened the door, and I know you're the UPS man. I see your brown truck with the UPS right on it there. He says, sorry, company rules. So I say, okay, and he walks around behind me and he knocks on my door, and then he says, UPS man, and we both chuckle, and then he gives me my package. It seems silly. I don't expect the UPS man to do that. It would be silly for the police to do that, and it seems to me as far as the knocking and announcing, we're not up to the entry yet, but as far as the knocking and announcing, your case seems to me like my UPS man hypo. They already know it's the police. They've already opened the door. Your Honor, the problem is if he had been standing there for ten seconds and the police had said, look, we're the police. He opens the door. He doesn't know the police are there. The police just stand there. The man in the house, nobody expressed any doubts about whether it was the police or robbers. They had doubts until the moment he opened the door.  It wasn't, who are you? Are you sure you're police? Let me see ID. Right away they recognized police. But what the police didn't do, and this is why it's a knock and announce violation, is not that they didn't engage in some ritualistic formality. The problem was the police didn't give him a meaningful opportunity to be told, we've got a search warrant, we have a right to come in, and then to let him in. It's asking too much for some ---- Well, now we're talking about the entry, not the knock and announce. Right. There's not the dispute. The entry would get to Judge Tolman's questions, but I was focusing on the knock and announce, and I'm trying to think what purpose it could possibly serve that wasn't served. The purpose is to, in a realistic meaning, give the person, as the Spice case says, a meaningful and reasonable opportunity to surrender your privacy voluntarily. What the police do here instead was the moment the door starts to close, they interpret that as just the excuse to just kick the door down. What was reasonable and meaningful about the opportunity to let them in peacefully? What should have happened, in my view, is two things. First, there is a separate knock and announce violation when the doors, moving the windows at the back and the side, are broken into. But just focusing on the front door, what should have happened was the police should have taken the minimum amount of time to just clarify the situation and say, look, we're the police, we've got a search warrant, open that door now, and the whole thing could have been avoided. How much more clarification do you need if the guy's slamming the door in your face because he sees it's the police outside? It's clear that they now know that the police are there and they don't want him in. I guess we're kind of arguing what's the purpose of the notification? The point is just because you know the police are there, that in itself isn't sufficient. The police have got to say why we're there, and it's totally different than if the police had knocked on the door. The person comes to the door expecting to see somebody there and then sees the police and then slams the door in their face. Then I think you could reasonably interpret that as a refusal. No, the evidence is totally different. If he comes to the door, he's just going to look around outside to see if there's a burglar. That's the – and then – The burglar turns out to be the police who are trying to enter, and then he slams the door in their face. Right. But the point is there wasn't any intervening period between the time he opened the door and the time that the police started barging their way in. Isn't it reasonable for the police to suspect at that point that because the door is being slammed in their face, the occupants don't want the police to come in and they are now taking steps to either arm themselves in order to prevent or to repulse the invasion, or they're destroying evidence? Well, Your Honor, if you look at the Miller case, which is a Supreme Court case, it's an old case, but it's still good law. There, the police come to the door. They're not in uniform. That's true. But they knock on the door. The person answers the door. They say, police. The guy slams the door or closes the door. The police break the door down. The Supreme Court found that the action of the person there in closing the door was ambiguous and that that was a violation of 3109, which is the same thing as the knock-and-announce rule. Now, all they needed to do here was give him enough time. It doesn't have to be a minute. I'm sorry? You're not answering my question. I'm sorry. Well, maybe I missed it. My question was, why isn't it reasonable for the officers at this point to think that since they have been refused entry by having the door slammed in their face, that the people inside are now preparing to repulse their entry? It's... Which could raise very significant concerns for officer safety when they know that there are explosives inside. It's unreasonable, Your Honor, because... It's unreasonable for the officers to suspect that. It's unreasonable to just assume without any further inquiry that they're being refused entry when they haven't knocked, when they know that the person who opened the door doesn't know that anyone is there or not or who is there. I mean, it's not to – if somebody is standing... I'm getting deja vu, I'm afraid. I'm sorry. I feel like I've heard your excellent argument at least... Well, I'm sorry. We're way over time. I apologize if I repeated myself. I was trying to answer the question, so... No, you're doing it. You're making a valiant effort, but you've got time for that. It's a good-spirited argument. It seems to me we're double past the time. Well, I certainly agree with that, Your Honor, so I will subside. Thank you. May it please the Court, my name is Helen Brenner. I'm here to represent the United States. And I'm going to be brief. Let me just simply say counsel raised the Miller case, the Supreme Court case in Miller. And I think his – what he's attempting to do really misses the point when he argues Miller, because in Miller you had officers outside the door who were in plainclothes, you had a door opening that had a chain on it, and you had officers who said, police in a very low voice, and the opinion itself references the fact that the people inside the house did – may not have even known what was happening here. In contrast to Miller, what we have here is a gentleman who opens the door. It's undisputed that he sees the police. The police are in raid clothes. We're not talking about people in plainclothes. We're talking about people with police emblazoned across their chest and hat. The SWAT team. The same question I asked your colleague, is it undisputed that the people inside, when they opened the door a bit before they started to close it, that they knew it was police in the hall outside? I believe it is, Your Honor. And I believe that you can look to that, to the testimony of Mr. Edwards, if nothing else, because Mr. Edwards clearly says he knew it was police. I don't think there was any dispute in the record that he knew it was police. I think what Mr. Gombiner is trying to distinguish is whether or not he knew that a search warrant was about to be executed. And in that regard, I would again refer the Court to Miller, because in Miller what the Court did say, and I will quote, It may be that without an express announcement of purpose, the facts known to the officers would justify them being virtually certain that the Petitioner already knows their purpose, so that an announcement would be a useless gesture. And I would submit to the Court that given the circumstances of this case with a number of officers in raid clothing outside the door, there can be little doubt that a warrant of some sort is about to be executed. This isn't a circumstance where someone is standing there in plain clothes, seeking maybe to interview or otherwise speak. I mean, does Mr. Gombiner have an argument that the dignity of the individual suspected of these bad things requires that the police say, we've got a warrant and give them a chance to submit voluntarily before tossing the stun grenade? Your Honor, I would submit that the Miller case is directly on point, because it suggests that in certain circumstances, words don't necessarily, the performer use of words in this case saying search warrant would be necessary. But in any event, I think the record is again clear that the word search warrant was in fact said at the point that the door was at least closing, whereas the officer was kicking it. It's a little unclear. The one officer who testified was fifth back in line, and he clearly heard police search warrant, and he testifies that he hears this as the door is being kicked in. And the person who was first in line testifies, he says police search as the door is closing, he doesn't, the door is closing before he gets warrant out, and then he kicks in the door. In any event, the words were uttered, but I would submit, Your Honor, I don't think the words needed to be uttered under these circumstances that the purpose was clear. And I think that the Court can look to other things. The one other point that I wanted to make is that Mr. Brownbeiner suggested that the explosives were not the reason for the SWAT entry, and I would just refer the Court to excerpt of record at page 89 where Sergeant Anderson testified that the explosives in the criminal history were the basis for the SWAT team, that they believed it was safer to use the SWAT team under these circumstances. I know it's been a long morning, and I could go on, but if the Court does not have questions for me, I'll submit on the briefs. Thank you, counsel. Thank you, counsel. Sure. We'll take a ten-minute recess. All rise. This Court is adjourned in a recess of ten minutes. Thank you.
judges: Kleinfeld, Gould, Tallman